## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MATHEW MIKU,**                              Case No. 5:19 CV 1625

    Petitioner,                              Judge Christopher A. Boyko

    v.                                       Magistrate Judge James R. Knepp II

**WARDEN DAVID GRAY,**

    Respondent.                              **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Mathew Miku ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden David Gray ("Respondent") filed an Answer (Doc. 10) and Petitioner filed a Reply (Doc. 11). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 5). For the reasons discussed below, the undersigned recommends the Petition be DENIED.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Fifth District Court of Appeals set forth the following facts on direct appeal:

{¶ 2} On the late morning of March 4, 2016, paramedics from the Canton Fire Department were dispatched to a residence on Dewalt Ave. NW in response to a report of an adult woman needing medical assistance. Appellant lived there with Hailey Miku, his young daughter, and his girlfriend Jessica Bender (who is not the child's mother). The paramedics instead discovered the body of three-year-old Hailey on a mattress in the living room. Paramedic John Huff later testified that appellant appeared "frantic" at the scene. Appellant then stated that Hailey had tripped over a cat and had fallen down a flight of carpeted stairs the previous week. Trial Tr. at 254, 256. Appellant told Huff that he had brought Hailey downstairs after discovering her in an unresponsive state. *Id.* Sergeant Robert Smith and Officer Dave Wolgamott of the Canton Police Department were also dispatched to the scene. According to Sgt. Smith, when he made contact with appellant, his response was: "I'm going to jail, ain't I?" Tr. at 267.

{¶ 3} Harry Campbell, the chief investigator for the Stark County Coroner, also came to the scene. He observed that rigor mortis had set in, and he observed *inter alia* "numerous injuries * * * across [Hailey's] scalp, the forehead, the bridge of the nose, and the right cheek." Tr. at 293. Campbell also noted additional injuries, including abrasions and bruises, about the girl's head and body.

{¶ 4} Appellant was interviewed by Detective Joseph Mongold at Canton Police headquarters, after signing a written waiver of his *Miranda* rights. Tr. at 455. Appellant told him that the girl's mother, Justina Longwell, had asked him around Thanksgiving of 2015 to watch Hailey for a few days, but that she thereafter avoided resuming physical custody. Tr. at 460–461. Appellant initially maintained his claim that Hailey had fallen down the stairs. As Mongold continued the questioning, he pointed out that the girl's numerous injuries were not consistent with a single fall down the carpeted stairs. Appellant at some point in the process added that she had also fallen off the toilet. Appellant further suggested that the girl may have had a reaction to Tylenol or Ibuprofen. Tr. at 464. At some point, appellant began to concede that he had "severe anger issues," that he usually took his frustration out on Hailey, and that he had a hard time controlling himself when he acted violently. Tr. at 465. He then admitted that he had hit her in the face with an open hand, causing her ear to bleed, and that he had beat her with a curtain rod. Tr. at 467. Ultimately, appellant confessed to the detective that he had gone too far and killed her. Tr. at 468. When asked about Jessica Bender's role in the abuse of Hailey, appellant stated Bender "didn't have a hard bone in her body and wouldn't hurt a fly." *Id.* Appellant also asked Det. Mongold to tell some of the neighbors that he knew what he had done was wrong. Tr. at 470.

* * *

{¶ 31} In the case *sub judice,* one of the State's key witnesses was Dr. Renee Robinson, a forensic pathologist with the Stark County Coroner's Office, who conducted the autopsy of Hailey's body. Among other things, she noted that Hailey weighed 27.2 pounds, which, according to her medical records, was down from her

2

October 2015 weight of just under 28.4 pounds. Tr. at 523. According to Dr. Robinson, Hailey was in just the 5th percentile for weight and body mass index for a child of her age. Tr. at 524. At the time of Hailey's death, there were no contents inside the stomach, and a toxicological screen of her blood and liver did not show the presence of Tylenol or Ibuprofen, in contradiction to what appellant initially told Det. Mongold. Tr. at 521, 557. There were numerous abrasions to the girl's face, indicating recent blunt trauma. One of her eyes was swollen, and there was "evidence that this eye [had] been bruised previously." Tr. at 526. Dr. Robinson also noted a tear in the skin behind her one ear, which the presence of a significant amount of dead skin on that part of the scalp. Hailey's hair was missing from his area, and some of her other hair easily came out in Dr. Robinson's hands during the autopsy. There was also some scabbing on her scalp, and skin had been taken off areas of the girl's face. Dr. Robinson concluded that none of these injuries were caused by a fall, but were instead the result of blunt trauma. Tr. at 520–533, 548.

{¶ 32} Dr. Robinson also noted green discoloration around Hailey's abdomen, and a collection of fluid on her hip bone. This indicated to Dr. Robinson that something was "not right" with Hailey's environment or "internal body chemistry" since these are signs usually seen when a dead body has been decomposing. Tr. at 535. On her body, in general, there were "multiple medical bruises" and "multiple areas of abraded skin." *Id.* Hailey's torso also had perimortem abrasions, which is indicative that these injuries were caused while she was dying. There was also an abrasion to the girl's labia. After examining Hailey's front side, Dr. Robinson noted bruising all along the girl's back area. Along with bruising, scabbing, and healing lesions on her buttocks, there were bruises up and down Hailey's spine, corresponding with the protrusions of her spine. According to Dr. Robinson, such injuries are often seen who have been bed-ridden for some time, producing "bed sores," which could also have been caused by standing against a wall for a long time. Tr. At 542. Dr. Robinson also testified that although most children do not lose any teeth until the age of six, when permanent teeth start coming in, Hailey at age three was already missing teeth and one front tooth was merely sitting in its socket. Dr. Robinson also noted bruising and contusions on the girl's legs, which again, were not the results of a fall according to the doctor, but were instead the result of blunt trauma. Tr. at 534–546.

{¶ 33} Dr. Robinson also opined that the foam found around Hailey's mouth at the time of her demise would indicate a "slower death." Blood and other bodily fluids were leaking inside Hailey's body, collecting in her lungs and then being expelled through her mouth. An examination of Hailey's internal organs showed the presence of "bacterial overgrowth" in her heart, brain, eyes, and kidneys, related to bacteria in the girl's bloodstream. These organs also indicated longstanding inflammation. In addition, the small intestine showed evidence of ongoing bleeding, which results when the body's clotting agents are consumed in dealing with bleeding and inflammation in other parts of the body. In addition, the presence of bone marrow emboli in Hailey's lungs indicated the girl's bones had suffered

trauma. Based on the status of her internal organs, Hailey would have needed hospitalization. Tr. at 546–557.

{¶ 34} Dr. Robinson's conclusion was that Hailey's manner of death was a homicide. As to cause of death, the doctor testified:

* * * My final anatomic diagnosis reads that she sustained inflicted trauma of varying ages of her head, face and scalp, of her torso, which is your trunk, and the extremities. There was evidence of neglect, both of general care and of medical care. There was sequelae of trauma and neglect which is things that can happen as a result of the trauma and neglect, and everything I talked about, the chronic inflammation and the things that I found in the organs are sequelae of that. With the final diagnosis coming under the heading of all these things, being the result of combined effects of acute and chronic inflicted trauma and neglect. Acute means short-term, chronic means long-term. * * *.
Tr. at 558–559.

{¶ 35} The State also called Jessica Bender, who lived with appellant during the pertinent times in this case. She recalled numerous instances of witnessing appellant hitting and slapping Hailey, hearing "thud" sounds from other rooms, observing the ear and scalp wound on the girl, and instances of appellant locking Hailey in her room for as long as a day and a half. Tr. at 388–415. Hailey was "always hungry" and would quickly drink any beverages Jessica gave her. Tr. at 394. Jessica said she last saw Hailey alive the night before she died. The next morning, appellant came downstairs about 8:30 AM, telling her that he had given the girl some Tylenol and that she wanted to go back to bed. According to Jessica, appellant left the house to get some cigarettes at about 9:00 or 10:00 AM, and after returning, he went upstairs and found her lifeless body at about 11:00 AM. After screaming out "she won't wake up," appellant called 911 and brought Hailey down to the mattress in the living room. Tr. at 419.

*State v. Miku*, 111 N.E.3d 558, 563-64, 567-68 (Ohio Ct. App.) ("*Miku I*").

## PROCEDURAL HISTORY

<u>State Court Conviction</u>

In July 2016, a Stark County, Ohio grand jury indicted Petitioner on one count of murder and one count of endangering children. (Ex. 1, Doc. 10-1, at 5-6). Petitioner, through counsel, entered a plea of not guilty. (Ex. 2, Doc. 10-1, at 8).

Petitioner subsequently moved to suppress statements he made to the police (Ex. 3, Doc. 10-1, at 9-16), which the State opposed (Ex. 4, Doc. 10-1, at 17-44). The trial court held a hearing

4

(Doc. 10-2 – transcript), and overruled Petitioner's motion, finding Petitioner's statements were voluntary. *See* Ex. 5, Doc. 10-1, at 45-48.

Before trial, Petitioner requested the court instruct the jury on the lesser included offense of involuntary manslaughter. (Ex. 6, Doc. 10-1, at 49-50). The State opposed the request. (Ex. 7, Doc. 10-1, at 51-55). The State also requested jury instructions defining the words "torture" and "cruelly abuse". (Ex. 8, Doc. 10-1, at 56-59). Petitioner requested an instruction regarding accomplice testimony regarding Jessica Bender. (Ex. 9, Doc. 10-1, at 60-61). The State also moved to amend the indictment to remove "aid and abet" language. (Ex. 10, Doc. 10-1, at 62). The trial court permitted the amendment. (Ex. 11, Doc. 10-1, at 64-65). After a trial (*see* Docs. 10-5, 10-6, 10-7 – transcripts), the jury found Petitioner guilty as charged. (Ex. 12, Doc. 10-1, at 66-68). The trial court sentenced Petitioner to fifteen years to life for the murder conviction and eight years (consecutive) for the endangering children conviction. (Ex. 13, Doc. 10-1, at 69-73).

<u>Direct Appeal</u>

Petitioner, through new counsel, filed a timely notice of appeal. (Ex. 14, Doc. 10-1, at 74). In his brief, Petitioner raised seven assignments of error:

1. The trial court erred when it overruled Appel[l]ant's Mot[i]on to Suppress.

2. Appellant's convictions were against the manifest weight and sufficiency of the evidence.

3. The trial court erred in admitting photos which were inflammatory and highly prejudicial.

4. The trial court erred in allowing testimony of prior bad acts.

5. The trial court erred when it failed to instruct the jury on involuntary manslaughter.

6. Appellant was denied his rights to due process and of assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States

Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because his trial counsel provided ineffective assi[s]tance.

7. The trial court erred when it failed to merge Appellant's convictions as allied offenses.

(Ex. 15, Doc. 10-1, at 75-107). The State filed a brief in opposition. (Ex. 16, Doc. 10-1, at 118-50). On April 20, 2018, the Ohio appellate court affirmed the trial court's judgment. (Ex. 17, Doc. 10-1, at 152-77); *Miku I*, 111 N.E.3d 558. Petitioner did not file an appeal with the Ohio Supreme Court. *See* Ex. 39, Doc. 10-1, at 494 (docket).

Application to Reopen

In June 2018, Petitioner filed a *pro se* application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 18, Doc. 10-1, at 178-88). Therein, Petitioner argued his appellate counsel was "ineffective for failing to argue that Defendant's trial counsel is ineffective when trial counsel fails to challenge the subject matter jurisdiction of the trial court." *Id.* at 182. Specifically, he argued that the indictment did not contain the requirement mental state of recklessness for a charge of child endangering. *Id.* On September 19, 2018, the appellate court denied Petitioner's application. (Ex. 19, Doc. 10-1, at 194-97) ("*Miku II*"). Therein, the court explained that "the Ohio Supreme Court has recognized that even when an indictment fails to charge the *mens rea* of the offense, it is not defective as long as it tracks the language of the criminal statute describing the offense, because that suffices to provide the defendant with adequate notice of the charges against him." *Id.* at 196.

Petitioner filed a timely notice of appeal to the Ohio Supreme Court. (Ex. 20, Doc. 10-1, at 198-99). In his memorandum in support of jurisdiction, he raised a single proposition of law:

1. Whether Appellate Counsel is ineffective for failing to argue that defendant's trial counsel is ineffective when trial counsel fails to challenge the subject matter jurisdiction of the trial court.

6

(Ex. 21, Doc. 10-1, at 200-08). The State filed a brief in opposition. (Ex. 22, Doc. 10-1, at 213-24). On January 23, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 23, Doc. 10-1, at 225).

Post-Conviction Petition

In January 2018, while his direct appeal was pending, Petitioner filed a *pro se* petition for post-conviction relief with the trial court. (Ex. 24, Doc. 10-1, at 226-37). He raised two claims:

1. Mr. Miku['s] 6th and 14th Amendment rights were violated due to ineffective counsel.

2. Trial counsel was put on notice to investigate through the interview with Detective Mongold . . . [and] trial counsel failed to investigate into a possible N.G.R.I [Not Guilty by Reason of Insanity] Defense.

*See id.* Petitioner attached an affidavit (*id.* at 239), and some medical records (*id.* at 240-56). He also filed a motion for appointment of counsel (Ex. 25, Doc. 10-1, at 281-83), and (before the State filed a response), a motion for summary judgment (Ex. 26, Doc. 10-1, at 284-87). The State then filed a response and motion to dismiss and for summary judgment. (Ex. 27, Doc. 10-1, at 288-305). Petitioner filed a reply. (Ex. 28, Doc. 10-1, at 306-17).

On June 27, 2018, the trial court denied Petitioner's motion for counsel (Ex. 29, Doc. 10-1, at 317), denied Petitioner's petition for post-conviction relief, and granted the State's motion to dismiss and for summary judgment (Ex. 30, Doc. 10-1, at 318-30).

Petitioner filed a timely notice of appeal. (Ex. 31, Doc. 10-1, at 331). In his brief, Petitioner set forth two assignments of error:

1. A trial court abuses its discretion when it unreasonably applies *Strickland v. Washington* to the facts of Petitioner's case.

2. Trial counsel was ineffective for failing to investigate into Miku's mental health history so that she could make an informed decision as to whether she should move the courts for a mental health expert/and or assert a NGRI defense.

 (Ex. 32, Doc. 10-1, at 345-65). The State filed a brief in opposition. (Ex. 33, Doc. 10-1, at 412-34). On October 29, 2018, the appellate court affirmed the trial court's judgment. (Ex. 34, Doc. 10-1, at 435-47); *State v. Miku*, 2018 WL 5733725 (Ohio Ct. App.) ("*Miku III*").

Petitioner filed a timely *pro se* notice of appeal with the Ohio Supreme Court. (Ex. 35, Doc. 10-1, at 448-49). In his memorandum in support of jurisdiction, he raised a single proposition of law:

1. Whether trial counsel was ineffective for failing to investigate into the mental health history of Mathew Miku so that she could make an informed decision as to whether she should move the court for a mental health expert/and or assert a N.G.R.I. defense?

(Ex. 36, Doc. 10-1, at 450-62). On February 20, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 37, Doc. 10-1, at 477).

## FEDERAL HABEAS CORPUS

In his federal habeas Petition, Petitioner raises three grounds for relief:

**GROUND ONE:** Petitioner['s] 14th Amendment rights to due process were violated as he was convicted when the State did not meet it[s] burden to prove the elements of the crime.

**Supporting facts:** The state court unreasonably applied *Jackson v. Virginia* to the facts of Petitioner['s] case. The appellate court['s] decision was a[n] unreasonable application of federal law sat [sic] down by the United States Supreme Court.

**GROUND TWO:** Ineffective assistance of counsel.

**Supporting facts:** Trial counsel did not meet her constitutional burden of investigating and presenting a NGRI defense, which violated Petitioner['s] 6th and 14th Amendment rights to the United States Supreme Court. Counsel also failed to investigate into the mental health history of Petitioner, so that she could make a reasonable decision into whether Petitioner needed a mental health expert.

**GROUND THREE:** Ineffective assistance of appellate counsel.

8

**Supporting facts:**     Appellate counsel was ineffective when he failed to argue ineffective assistance of counsel for failing to challenge the trial court[']s jurisdiction, in Petitioner[']s appeal of right.

(Doc. 1, at 5, 7, 8) (capitalization altered).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there

9

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

Respondent contends that Ground One is improperly pled or procedurally defaulted, Ground Two is partially procedurally defaulted and partially meritless, and Ground Three fails on the merits. For the reasons discussed below, the undersigned recommends the Petition be denied.

Ground One

In Ground One, Petitioner contends his Fourteenth Amendment due process rights were violated when he was convicted on insufficient evidence, and the state court "unreasonably applied *Jackson v. Virgnia*" to his case. (Doc. 1, at 5). Respondent contends this ground: (1) is not pled with the specificity required by Rule 2(c) of the Rules Governing Section 2254 Proceedings; or, alternatively, (2) is procedurally defaulted by Petitioner's failure to file a timely Ohio Supreme Court appeal. (Doc. 10, at 15-20).

Rule 2(c) of the Rules Governing Section 2254 Cases provides that a habeas petition must "state the facts supporting each ground" for relief. Petitioner asserts the state court was wrong, but does not explain how. *See* Doc. 1, at 5. Moreover, Petitioner does not elaborate in his Reply after Respondent asserted the claim was not adequately pled, but rather presents no argument at all on his sufficiency ground, and seemingly renumbers his original Grounds Two and Three as Grounds One and Two. *See* Doc. 22, at 9-44.

Rule 2(c) is "more demanding" than Federal Rule of Civil Procedure 8(c), which requires in "ordinary civil proceedings" that the complaint "provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also McFarland v. Scali*, 512 U.S. 849, 860 (1994)

10

(O'Connor, J., concurring in part) ("the habeas petition, unlike a complaint, must allege the factual underpinnings of the petitioner's claims"); *Johnson v. Sheldon*, 2015 WL 3650695, at *2 (N.D. Ohio) ("'Notice' pleading is insufficient in the habeas context, as the petitioner is expected to state facts that point to a real possibility of constitutional error."). Failing to provide factual context in support of legal conclusions warrants dismissal of the petition or claims. *Smith v. Haskins*, 421 F.2d 1297, 2398 (6th Cir. 1970).

Although Ground One asserts Petitioner was convicted on insufficient evidence and that the state court mis-applied *Jackson v. Virginia*, Petitioner asserts no specific factual detail regarding how the evidence was insufficient. *See* Doc. 1, at 5. The undersigned finds Petitioner was certainly aware – by way of Respondent's argument in his Answer – that his Petition was potentially deficient. And yet, he presented no argument in his Reply, and seemingly abandoned the claim by renumbering his grounds for relief. *See, e.g.*, *Rice v. Hudson*, 2009 WL 2410436, at *16 (N.D. Ohio) (finding claim abandoned for failure to address it in reply brief); *see also Statzer v. Marquis*, 2020 WL 1510241, at *15 (S.D. Ohio) ("In his Second Ground for Relief as pleaded, Statzer claims he was denied his Sixth Amendment rights to confront his accusers and to present a defense. However, he makes no argument in support of this claim in his Traverse and accordingly has abandoned it.") (report and recommendation). As such, the undersigned recommends the Court dismiss Ground One for failure to comply with Rule 2(c), or, alternatively, find Petitioner abandoned the claim by failing to address it in his Reply.

Ground Two[1]

In Ground Two, Petitioner asserts ineffective assistance of trial counsel for: (1) failure to investigate and present a not guilty by reason of insanity defense; and (2) failure to investigate into

---

1. As noted above, in Petitioner's Reply this is labeled as "Ground 1". *See* Doc. 11, at 9.

Petitioner's mental health history "so that she could make a reasonable decision into whether petitioner needed a mental health expert." (Doc. 1, at 7). Respondent asserts that to the extent this ground is based on evidence inside the trial record, it is procedurally defaulted, and to the extent it is based on evidence outside the trial record, it is without merit. (Doc. 10, at 20-26). The undersigned agrees.

*Exhaustion and Procedural Default*

First, the undersigned notes the relevant law regarding exhaustion and procedural default. To seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254(b)(1)(A), which provides: "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State". Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This is to "alert[] [the state court] to the fact that the prisoner[ ] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (internal quotation marks omitted) (citations omitted). To accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). Hence, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Whiting*, 395 F.3d at 612; *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (a claim is fairly presented if that "claim [has been] presented to the state courts under the same legal theory in which it is later presented in federal court.") (quoting *Wong v. Money*, 142 F.3d

313, 322 (6th Cir. 1998)) (alteration in *Williams*). In the context of an ineffective assistance claim, "to the extent that [such a] claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts." *Caver v. Straub*, 349 F.3d 340, 346-47 (6th Cir. 2003)

Related to exhaustion is the concept of procedural default, which can occur in two ways. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim may be procedurally defaulted if a petitioner "fail[s] to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 848-47). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan*, 526 U.S. at 845, 848. Additionally, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).

Hence, if a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). One such bar is the doctrine of *res judicata*. Under Ohio law, *res judicata* bars petitioners from litigating claims that either could have or were fully litigated at trial or on direct appeal. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967)).

Second, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding

relief, the claim is procedurally defaulted. *Id.*; *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit "has consistently held that Ohio's doctrine of res judicata is an 'adequate and independent' ground justifying default." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006); *accord Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012).

To overcome procedural default, a petitioner must demonstrate both cause for the default and prejudice from the error. *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).[2]

*Ineffective Assistance of Counsel Claims Under Ohio Law*

Next, for context, the undersigned notes that Ohio has a "dual-track system" for ineffective assistance of counsel claims:

> Ohio has two forms of IATC claims. *McGuire v. Warden*, 738 F.3d 741, 751 (6th Cir. 2013), *cert. denied*, *McGuire v. Robinson*, —— U.S. ——, 134 S.Ct. 998, 187 L.Ed.2d 847 (2014). Claims based on evidence wholly *within* the trial record must be brought on direct appeal, while claims based on evidence *outside* the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *Id.* (citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982)). In this dual-track system, *res judicata* bars an IATC claim brought in a state post-conviction petition that relies on evidence within the trial record, because such a claim could have been brought on direct appeal. *Id.* (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967)).

---

2. A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a claim requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner presents no such claim or evidence here. *See* Docs. 1, 11.

*Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016).

*IAC Claim Based on Evidence Within the Trial Record*

With this background, the undersigned turns to the substance of Ground Two. To the extent Petitioner's ineffective assistance of trial counsel claim for failure to investigate or present an insanity defense is based on evidence within the trial record, he is procedurally barred from raising it at this juncture. On direct appeal, Petitioner raised an ineffective assistance of counsel claim, but it was based on entirely different facts than Petitioner now presents. *See* Ex. 15, Doc. 10-1, at 101-02 (appellate brief arguing counsel was ineffective for failing to inquire or present evidence at the suppression hearing that Petitioner was suffering from intoxication or drug use, failing to object to the admission of autopsy photos, and failing to file a motion in limine regarding prior bad acts testimony). To preserve an ineffectiveness claim for federal habeas review, Petitioner must present the same claim – based on the same facts and same legal theory – as presented to the state courts. *See Wong*, 142 F.3d at 322 ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *see also Caver*, 349 F.3d at 346-47 ("to the extent that [an ineffective assistance] claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented"). Petitioner did not raise his current claim that counsel was ineffective for failing to present a not guilty by reason of insanity defense. Thus, to the extent such a claim was based on evidence inside the trial record – it is now procedurally defaulted under Ohio's *res judicata* rule, which requires claims based on the trial record to be brought on direct appeal. *See Seymour*, 224 F.3d at 555; *Perry*, 10 Ohio St. 2d at 180.

Petitioner does not present cause and prejudice to overcome this default. And, to the extent he might assert ineffective assistance of appellate counsel for failing to waive such a claim, he

15

would not succeed. To serve as cause, an ineffective assistance of appellate counsel claim must itself be fully exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Petitioner presented an ineffective assistance of appellate counsel claim to the state courts, but not on the same factual basis. *See* Ex. 18, Doc. 10-1, at 178-88; *see also Caver*, 349 F.3d at 346-47. Ohio does not permit successive Rule 26(B) applications (the mechanism by which to bring an ineffective assistance of appellate counsel claim). Therefore, any such claim of ineffective assistance of appellate counsel claim on this basis is procedurally defaulted itself and cannot be used to overcome the procedural default of Petitioner's ineffective assistance of trial counsel claim. *See Humr v. Miller*, 2012 WL 1132756, at *6 (S.D. Ohio) (citing *State v. Twyford*, 106 Ohio St. 3d 176 (2005)).

### IAC Claim Based on Evidence Outside the Trial Record

Petitioner's ineffectiveness claim is based – at least in part – on evidence outside the trial record. When Petitioner raised this claim in his state court post-conviction petition, he attached an affidavit stating he told his trial attorney he heard voices, but that she told him an insanity plea would not work. (Ex. 24, Doc. 10-1, at 239). He further attached some medical records showing, *inter alia*, diagnoses of generalized anxiety disorder, major depressive disorder, and an unspecified mood disorder. *Id.* at 240-56. As noted above, claims of ineffective assistance of trial counsel based on evidence outside the record are properly raised in post-conviction proceedings. *See Hill*, 842 F.3d at 936 (citing *McGuire*, 738 F.3d at 751 (citing *Cole*, 2 Ohio St. 3d 112)).

Clearly established federal law dictates that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012); *see also Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963). The Supreme Court announced a two-prong test for ineffective assistance of counsel in *Strickland v. Washington*,

466 U.S. 668, 687 (1984). First, the petitioner must demonstrate counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Trial counsel has a "duty to investigate derive[d] from counsel's basic function, which is to make the adversarial testing process work in the particular case", *Towns v. Smith*, 395 F.3d at 251, 258 (6th Cir. 2005), and counsel's performance may be constitutionally deficient for failure to conduct a reasonable investigation, *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *see also Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Second, the petitioner must show he was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The deferential standards established by *Strickland* and § 2254(d) make habeas review of ineffective-assistance claims "doubly" deferential. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). When a case is governed by § 2254(d), "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The state appellate court addressed this claim as raised in Petitioner's post-conviction petition (Ex. 24, Doc. 10-1, at 226-56) and rejected it:

> {¶ 35} We have previously held that our standard of review is de novo when reviewing a trial court's dismissal or denial of a petition for post-conviction relief without a hearing. *State v. Johnson*, 5th Dist. Guernsey No. 12 CA 19, 2013-Ohio-1398, ¶ 27, citing *State v. Volgares,* 4th Dist. Lawrence No. 05CA28, 2006-Ohio-3788, ¶ 8, internal citation omitted.

{¶ 36} The Ohio Supreme Court has also recognized: "In post-conviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor,* 112 Ohio St.3d 377, 388, 860 N.E.2d 77, 2006–Ohio–6679, ¶ 51. A petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Wilhelm,* 5th Dist. Knox No. 05–CA–31, 2006–Ohio–2450, ¶ 10, citing *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). As an appellate court reviewing a trial court's decision in regard to the "gatekeeping" function in this context, we apply an abuse-of-discretion standard. *See Gondor, supra,* at ¶ 52, citing *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999); accord *State v. Scott,* 5th Dist. Stark No.2006CA00090, 2006–Ohio–4694, ¶ 34. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 37} Appellant argues that his trial counsel was ineffective in failing to investigate his mental health history and pursue an insanity defense. In general, a trial counsel's failure to seek a competency evaluation or to pursue an insanity defense is not, per se, ineffective assistance of counsel. See *State v. Decker* (1986), 28 Ohio St.3d 137. It is only where the facts and circumstances indicate that a plea of not guilty by reason of insanity would have had a reasonable probability of success that it is ineffective assistance of counsel to fail to pursue such a defense strategy. See *State v. Brown* (1992), 84 Ohio App.3d 414, 421-22.

{¶ 38} The insanity defense is set forth in R.C. 2901.01(A)(14), which provides:

{¶ 39} "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves * * * that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."

{¶ 40} Thus, for appellant to demonstrate that he was entitled to a hearing and/or post-conviction relief, he was required to make some facial showing that he would have had a reasonable probability of proving that at the time he committed the offenses, he "did not know, as a result of a severe mental disease or defect, the wrongfulness of [his] acts."

{¶ 41} The trial court found, and we concur, that appellant has not proven that he was insane at the time he committed the offenses against his daughter. While appellant has submitted materials in support of his petition indicating that he had an "unspecified mood disorder" and allegedly heard voices, as noted by appellee and the trial court, they did not demonstrate insanity as defined by law. Appellant has not presented any <u>evidence</u> that he suffered from a mental defect or disease that prevented him from understanding the wrongfulness of his criminal conduct. As noted by the trial court, appellant "has thus failed to present a *prima facie* case of

insanity. He has failed in demonstrating that his trial counsel was ineffective in failing to request the appointment of an expert witness in order to assist with a possible insanity defense. Counsel did not violate a duty of legal representation by failing to present a defense to a criminal charge without any evidence in support of that defense. Accordingly, [appellant] was not prejudiced by counsel's failure to pursue the insanity defense."

{¶ 42} Moreover, the evidence presented at trial did not demonstrate a possible insanity defense. As is stated above, there was testimony that appellant lied to paramedics and law enforcement about the cause of his daughter's death. He initially claimed that she fell down the stairs or off of the toilet and then claimed that she had an allergic reaction to Tylenol or Ibuprofen. There was thus evidence that he tried to conceal his criminal conduct. At some point, appellant began to concede that he had "severe anger issues," that he usually took his frustration out on Hailey, and that he had a hard time controlling himself when he acted violently. Tr. at 465. He then admitted that he had hit her in the face with an open hand, causing her ear to bleed, and that he had beat her with a curtain rod. Tr. at 467. Ultimately, appellant confessed to the detective that he had gone too far and killed her. Tr. at 468. When asked about Jessica Bender's role in the abuse of Hailey, appellant stated Bender "didn't have a hard bone in her body and wouldn't hurt a fly." *Id.* Appellant also asked Det. Mongold to tell some of the neighbors that he knew what he had done was wrong. Tr. at 470.

{¶ 43} Based on the foregoing, we find that the trial court did not err in denying appellant's Petition for Post-Conviction Relief without a hearing. We find that appellant has not presented evidentiary quality materials supporting his allegation that his trial counsel was ineffective and that, therefore, his petition was properly dismissed by the trial court without a hearing.

*Miku III*, 2018 WL 5733725, at *5-6.

The state court thus found that Petitioner had not demonstrated counsel performed deficiently, nor could he show prejudice. In his Reply, Petitioner contends that his trial counsel was ineffective for failing to investigate his mental health history before ruling out an insanity defense. (Doc. 11, at 10).

As noted above, however, the factual findings of the state court are presumed correct unless Petitioner proves otherwise "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The state court found that Petitioner "has not presented any <u>evidence</u> that he suffered from a mental defect or disease that prevented him from understanding the wrongfulness of his criminal conduct." *Miku*

*III*, 2018 WL 5733725, at \*5 (emphasis in original). It found thus, he had not established a *prima facie* case of insanity and therefore his counsel could not be said to have performed deficiently for failing to raise such a defense nor could Petitioner show prejudice. *Id.* ("Counsel did not violate a duty of legal representation by failing to present a defense to a criminal charge without any evidence in support of that defense. Accordingly, [appellant] was not prejudiced by counsel's failure to pursue the insanity defense.") (internal quotation omitted). This was a reasonable evaluation of Petitioner's claim and not contrary to, or an unreasonable application of, *Strickland.*

The state court considered the evidence presented by Petitioner that he allegedly heard voices and of his mental health issues. *Miku III*, 2018 WL 5733725, at \*5. It found, however, that Petitioner had not provided evidence "that he suffered from a mental defect or *disease that prevented him from understanding the wrongfulness of his criminal conduct.*" *Id.* (emphasis added). And, indeed the state court pointed to facts presented at trial to the contrary – demonstrating the Petitioner "tried to conceal his criminal conduct", "asked Det. Mongold to tell some of the neighbors that he knew what he had done was wrong", and that Jessica Bender could not have abused Hailey because she "didn't have a hard bone in her body and wouldn't hurt a fly." *Id.* at \*5. The court thus concluded Petitioner had failed to present evidence of *a prima facie* case of insanity. *Id.* at \*4-5 (noting Ohio definition, under Ohio Revised Code § 2901.01(A)(14), for "not guilty by reason of insanity" requires a person to prove that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts.").

Petitioner has not presented clear and convincing evidence to undermine these factual findings. And based on these facts, the state court reasonably determined that it was not deficient performance for counsel not to pursue a not guilty by reason of insanity defense because Petitioner

could not satisfy the standard for such a defense. *Cf. Grasso v. Beightler*, 2015 WL 2089742, at *16 (N.D. Ohio) ("Grasso presented no evidence demonstrating that he was, in fact, incompetent to stand trial. Instead, Grasso's traverse appears to be based purely on layers of conjecture, suggesting that *if* trial counsel had conducted a sufficient investigation, the results *may* have necessitated a motion for a mental evaluation, which presumably *could* have resulted in a determination that Grasso was incompetent.") (emphasis in original).

In his Reply, Petitioner cites numerous cases addressing mitigation in capital cases. *See* Doc. 11, at 14-17 (citing, e.g., *Wiggins v. Smith*, 529 U.S. 510 (2003); *Porter v. McCollum*, 558 U.S. 30 (2009); *Williams v. Taylor*, 529 U.S. 362 (2000); *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995)). But these cases are inapposite to Petitioner's claim that counsel should have pursued a not guilty by reason of insanity defense in this non-capital case. Petitioner also argues *Ake v. Oklahoma*, 470 U.S. 68 (1985) – requiring appointment of a psychiatric expert at the State's expense in capital cases –should be extended to this case. *See* Doc. 11, at 23 ("Miku asserts that his case wasn't a death penalty case, *and this standard should be extended to this case*.") (emphasis in original). Preliminarily, this Court cannot "extend" Supreme Court caselaw, but can only determine on AEDPA review, whether the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1). But more importantly, Petitioner did not raise an insanity defense in this case and, as discussed, the state court finding that counsel did not render ineffective assistance in not so doing is not contrary to or an unreasonable application of *Strickland*. Therefore, even if *Ake* applied to non-capital cases (*see Gosnell v. Hodge*, 2010 WL 3521748, at *12-13 (E.D. Tenn) ("[This Court has been unable to find[] a United States Supreme Court case which, like Tennessee's highest court, extends the rule

21

in *Ake* to non-capital cases."), it would not change the result here as *Ake* only applies to cases in which the "defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial." 470 U.S. at 74. The state court here made a factual finding that Petitioner had not presented such evidence. *See Miku III*, 2018 WL 5733725, at *5.

Again, on federal habeas review under AEDPA, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. The state court decision here presents just such a "reasonable argument that counsel satisfied *Strickland*'s deferential standard" here. *Id.* Further, "where the alleged error of counsel is a failure to advise a defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Here, the state court cited evidence Petitioner did understand the wrongfulness of his conduct and thus a not guilty by reason of insanity defense likely would not have succeeded at trial. *Miku III*, 2018 WL 4733725, at *5. Therefore, the state court's finding that Petitioner could not show prejudice from any failure by trial counsel to further investigate his mental state or present this defense is not contrary to or an unreasonable application of federal law. The undersigned thus recommends the Court deny Ground Two.

Ground Three[3]

In Ground Three, Petitioner asserts ineffective assistance of *appellate* counsel for failure to raise ineffective assistance of *trial* counsel on the basis that trial counsel failed to challenge the trial court's jurisdiction. (Doc. 1, at 8). The basis for this claim is Petitioner's assertion that the indictment did not include the element of recklessness. Respondent asserts this claim is meritless,

---

3. In Petitioner's Reply, this is labeled as "Ground 2". *See* Doc. 11, at 36.

and the Ohio appellate court's evaluation thereof is not contrary to, or an unreasonable application of, clearly established federal law. (Doc. 10, at 26-30). Petitioner raised this claim in his application for reopening to the Ohio appellate court (Ex. 18, Doc. 10-1, at 178-88), and again to the Ohio Supreme Court (Ex. 21, Doc. 10-1, at 200-08). It is thus preserved for federal habeas merit review. However, as discussed below, the undersigned agrees with Respondent that the claim fails on AEDPA review and therefore recommends it be denied.

A defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). For such claims, therefore, Petitioner must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *See Strickland*, 466 U.S. at 687.

An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted). It is also well settled that counsel cannot be considered ineffective for failure to pursue a meritless argument. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.") (citations omitted); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.").

The Ohio Fifth District Court of Appeals considered this claim on appeal from the trial court's denial of Petitioner's application for reopening. *See* Ex. 19, Doc. 10-1, at 194-97. The court set forth the *Strickland* standard (*id.* at 195-96), and then rejected Petitioner's argument as follows:

> Appellant herein essentially asserts that his appellate counsel on direct appeal was ineffective for failing to argue, as part of his claim of ineffective assistance of trial counsel, that the trial counsel lacked subject matter jurisdiction due to the lack of "recklessness" language in the indictment for the count of child endangering. *See* Application at 5.
>
> Although not stated in R.C. 2919.22, recklessness is the culpable mental state for the crime of child endangering. *State v. Colopy*, 5th Dist. Knox no. 2011-CA-3, 2011-Ohio-6120, ¶ 34. However, the Ohio Supreme Court has recognized that even when an indictment fails to charge the *mens rea* of the offense, it is not defective as long as it tracks the language of the criminal statute describing the offense, because that suffices to provide the defendant with adequate notice of the charges against him. *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶24, citing *State v. Homer*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 45 (internal quotations omitted).
>
> <u>Conclusion</u>
>
> Upon review of the language of the July 26, 2016 indictment against appellant, pursuant to *Wesson*, *supra*, we find no genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel on the issue presented.

*Id.* at 196-97.

First, the Ohio court's interpretation of Ohio law is binding on this federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, because the Ohio court found no error in the language of Petitioner's indictment in conferring jurisdiction on the state court, this Court cannot find to the contrary. Petitioner's lengthy argument (Doc. 11, at 37-44) as to why the Ohio court was wrong regarding *Ohio* law is thus not relevant to the instant analysis. Moreover, it is incorrect. As another district court recently explained in response to a similar argument:

> In Ohio it is the Common Pleas courts who have trial jurisdiction over felony offenses and all the charges in the Indictment were felonies, so [the petitioner] is not claiming some other court had jurisdiction. Instead, his claim is that omission of an element of the crime of engaging in a pattern of corrupt activity prevented the

Shelby County Common Pleas Court from exercising its felony trial jurisdiction in this case.

[The petitioner] presents no authority for the proposition that omission of an element renders an indictment void and deprives the court of jurisdiction. While that theory had some purchase in Ohio law for a time, it is no longer valid. In *State v. Colon*, 118 Ohio St. 3d 26 (2008)("Colon I"), the Ohio Supreme Court held that omission of an essential element from an indictment is a structural error not subject to harmless error analysis, but never suggested that this deprived the Common Pleas Court of jurisdiction. On reconsideration, the Ohio Supreme Court held *Colon I* is prospective only in its application and the syllabus in *Colon I* is confined to the facts of that case. *State v. Colon*, 119 Ohio St. 3d 204 (2008)(*Colon II*). *Colon I* was decided April 9, 2008; *Colon II* was decided July 31, 2008.

"[W]hen an indictment fails to charge a *mens rea* element of the crime but tracks the language of the criminal statute describing the offense, the indictment provides the defendant with adequate notice of the charges against him and is, therefore, not defective. ... *Colon I* is overruled, and *Colon II* is overruled to the extent that it holds such an indictment is defective. Further, we hold that failure to timely object to a defect in an indictment constitutes waiver of the error. Crim. R. 12(C)(2)(objections to defect in indictment must be raised before trial). Any claim of error in the indictment in such a case is limited to plain-error review on appeal. *State v. Frazier* (1995), 73 Ohio St. 3d 323; Crim. R. 52(B)." *State v. Horner*, 126 Ohio St. 3d 466, 473 (2010).

*Barga v. Collins*, 2019 WL 7282111, at *8 (S.D. Ohio), *supplemented*, 2020 WL 805225, *report and recommendation adopted*, 2020 WL 1846753.

Second, the Ohio appellate court's analysis is neither contrary to, nor an unreasonable application of federal law. That is, it cannot be ineffective assistance of counsel to fail to bring a state law claim which the state court found lacked merit. Moreover, "there is no constitutional right in a state prosecution to a grand jury indictment with particular specificity." *Williams v. Haviland*, 467 F.3d 527, 531 (6th Cir. 2006) (rejecting petitioner's argument in § 2254 proceedings that state court indictment for complicity in aggravated murder under Ohio Revised Code § 2903.01(B) was deficient for failing to allege specific *mens rea*). Because Petitioner has failed to establish that his underlying claim – which was based on Ohio law – had merit, it cannot be ineffective assistance of counsel for his appellate counsel to fail to raise the claim. *See Coley*, 706 F.3d at 752 ("Omitting

meritless arguments is neither professionally unreasonable nor prejudicial."). As such, the undersigned recommends Ground Three be DENIED.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED in its entirety.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).