UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATHEW MIKU, | ) | CASE NO. 5:19CV1625 |
| | ) | |
| Petitioner, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| DAVID GRAY, Warden | ) | OPINION AND ORDER |
| | ) | |
| Respondent. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

This matter comes before the Court on Petitioner Mathew Miku's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Doc. 1. For the following reasons, the Court accepts and adopts the Magistrate Judge's Report and Recommendation and **DISMISSES** the Petition.

### BACKGROUND[1]

**A. Factual History**

In the late morning of March 4, 2016, paramedics from the Canton Health Department arrived at Petitioner's residence and discovered the body of Petitioner's three-year-old daughter, Hailey Miku, on a mattress in the living room. Petitioner told a paramedic that he brought Hailey downstairs when he discovered her unresponsive. Petitioner said one week prior, she had

---

[1] The following background is adapted from Petitioner's direct appeal to Ohio's Fifth District Court of Appeals, *Ohio v. Miku*, 111 N.E.3d 558 (Ohio Ct. App. 2018) ("*Miku I*").

1

tripped and fallen down the flight of carpeted stairs. When Sergeant Robert Smith of the Canton Police Department arrived, Petitioner said to him, "I'm going to jail, ain't I?" Tr. at 267.

At Canton Police headquarters, Petitioner signed a written waiver of his *Miranda* rights. Tr. at 455. In an interview with Detective Joseph Mongold, Petitioner initially insisted that Hailey fell down the stairs but as the questioning continued, Petitioner mentioned that Hailey had also fallen off the toilet. Petitioner eventually conceded that he had "severe anger issues," he took his frustration out on Hailey and "once he started showing his anger towards Hailey," he "just couldn't stop." Tr. at 465. Ultimately, Petitioner confessed that he had gone too far and killed Hailey. He said, "I tell myself to stop, but there's voices in my head that says no just keep doing it . . . I killed my daughter, I cannot believe this." Ex. 24, Doc. 10-1, PageID 342. At the end of the interview, unsolicitedly, Petitioner asked Detective Mongold to tell the prosecutors, "I know what I did was wrong." Tr. at 470.

At trial in January 2017, Dr. Renee Robinson, a forensic pathologist, noted that the bruising and contusions on Hailey's legs were results of blunt trauma, rather than a fall. Tr. at 534-46. Based on the status of Hailey's internal organs, Dr. Robinson believed that Hailey suffered from longstanding inflammation requiring hospital care. Foam around Hailey's mouth indicated a "slower death" and perimortem abrasions on Hailey's torso indicated injuries sustained while she was dying. Tr. at 542-57. Dr. Robinson concluded that Hailey's death was a homicide caused by the "combined effects of acute and chronic trauma and neglect." Tr. at 558-59.

Petitioner offered evidence outside the trial record to attest to his mental health.[2] In an affidavit, Petitioner said he informed counsel six months before trial that he "still heard these voices" in his head and he needed to be evaluated because of "what [the voices] were telling [him] to do." Ex. 24, Doc. 10-1, PageID 306. Petitioner also offered medical records from a visit to Phoenix Health five months before the offense. The records diagnosed Petitioner with attention deficit disorder, an unspecified mood disorder, generalized anxiety disorder and major depressive disorder. *Id.* at PageID 321. Counsel told him an insanity defense would not work because a jury would never believe he was insane at the time of the offense. *Id.* at PageID 306.

### B. Procedural History

At trial, the jury found Petitioner guilty of murder and child endangerment. Ex. 1, Doc. 10-1, PageID 72-3. The trial court sentenced Petitioner to twenty-three years to life. Ex. 13, Doc. 10-1, PageID 139. Petitioner's § 2254 Petition for Habeas Relief stems from this conviction.

On direct appeal, Petitioner raised seven assignments of error, including ineffective assistance of trial counsel.[3] Ex. 14, Doc. 10-1, PageID 141; Ex. 15, Doc. 10-1, PageID 143-44. On April 20, 2018, Ohio's Fifth District Court of Appeals affirmed the trial court's judgment. *Miku I*, 111 N.E.3d 558, 574 (Ohio Ct. App. 2018). Petitioner did not appeal to the Ohio Supreme Court.

In June 2018, Petitioner filed a *pro se* motion under Ohio Appellate Rule 26(B) to re-open his appeal, arguing ineffective appellate counsel. Ex. 18, Doc. 10-1, PageID 179. The

---

[2] Petitioner submitted the evidence with his *pro se* Petition for Post-Conviction Relief.

[3] Petitioner argued counsel was ineffective for failing to inquire or present evidence at the suppression hearing that Petitioner was suffering from intoxication or drug use, failing to object to the admission of autopsy photos, and failing to file a motion in limine regarding prior bad acts testimony. *See* Ex. 15, Doc. 10-1, PageID 168.

3

appellate court denied Petitioner's Motion. Ex. 19, Doc. 10-1, PageID 197; *State v. Miku*, No. 2017CA00057 (Ohio Ct. App. Sept. 19, 2018) ("*Miku II*"). Petitioner appealed to the Ohio Supreme Court, which, in January 2019, declined to hear the case. Ex. 20, Doc. 10-1, PageID 266; Ex. 23, Doc. 10-1, PageID 292.

While his direct appeal was pending, Petitioner filed a *pro se* Petition for Post-Conviction Relief in State court, raising an ineffective assistance of counsel claim. But unlike his direct appeal, Petitioner based the claim on counsel's failure to investigate a possible Not Guilty by Reason of Insanity ("NGRI") defense. Ex. 24, Doc. 10-1, PageID 294. Petitioner included an affidavit and medical records as evidence of his mental illness. Ex. 24, Doc. 10-1, PageID 306-13. On June 27, 2018, the trial court denied the Petition for Post-Conviction Relief. Petitioner appealed, setting forth two assignments of error: 1) that the trial court abused its discretion by unreasonably applying *Strickland v. Washington* and 2) ineffective assistance of trial counsel for failing to investigate an NGRI defense. Ex. 29, Doc. 10-1, PageID 385; Ex. 31, Doc. 10-1 PageID 398. The appellate court affirmed the trial court's ruling in October 2018. Ex. 34, Doc. 10-1, PageID 502; *State v. Miku*, No. 2018CA00094, 2018 WL 5733725 (Ohio Ct. App. Oct. 29, 2018) ("*Miku III*"). Petitioner appealed to the Ohio Supreme Court, raising a single proposition of law in his Memorandum in Support of Jurisdiction:

> 1. Whether trial counsel was ineffective for failing to investigate into the mental health history of Mathew Miku so that she could make an informed decision as to whether she should move the court for a mental health expert/and or assert a N.G.R.I. defense?

Ex. 36, Doc. 10-1, PageID 518. The Ohio Supreme Court declined to accept jurisdiction on February 20, 2019.

4

Five months later, Petitioner filed his Petition for Habeas Relief, asserting three grounds, the second of which is most relevant for this Court:

> **GROUND TWO:** Ineffective assistance of counsel.
>
> **Supporting facts:** Trial counsel did not meet her constitutional burden of investigating and presenting a NGRI defense, which violated Petitioner['s] 6th and 14th Amendment rights to the United States Supreme Court. Counsel also failed to investigate into the mental health history of Petitioner, so that she could make a reasonable decision into whether Petitioner needed a mental health expert.

Doc. 1, PageID 7 (capitalization altered). The Warden filed his Return of Writ on November 25, 2019, arguing for a dismissal of all Petitioner's claims. Doc. 10, PageID 50. Petitioner filed his Traverse on December 12, 2019.

The Magistrate Judge issued his Report & Recommendation on September 11, 2020, recommending a dismissal of Ground One, a denial of Ground Three and a dismissal in part and denial in part of Ground Two for procedural default and lack of merit. Doc. 14, Page ID 1180, 1184, 1191, 1195. Petitioner filed his Objection on February 1, 2021, only objecting to the recommendation on Ground Two. Petitioner's Objection centers on the Magistrate Judge's denial for lack of merit under the *Strickland* standard. Petitioner did not object to the findings regarding procedural default.

## STANDARD OF REVIEW

In a federal habeas proceeding, the Antiterrorism and Effective Death Penalty Act of 1996 dictates a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455

(2005) (internal citation omitted).  The state court's determinations shall not be disturbed unless the adjudication of the claim resulted in a decision that was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) based on an unreasonable determination of facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).  Thus, a federal court may issue a habeas corpus writ only when the state court 1) arrived at a conclusion on a question of law opposite to that reached by the U.S. Supreme Court, 2) decided a case with materially indistinguishable facts differently than the U.S. Supreme Court, or 3) misapplied the correct governing legal principle.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Lastly, a federal judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.  A judge may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## ANALYSIS

Because Petitioner only objected to the Report & Recommendation on Ground Two,[4] the Court adopts and accepts the Magistrate Judge's recommendations on Grounds One and Three. The analysis below reviews Ground Two, the ineffective assistance of counsel claim.

Ohio has a "dual-track system" for ineffective assistance of counsel claims as set out in *McGuire v. Warden*, 738 F.3d 741 (6th Cir. 2013).  Claims based on evidence wholly **within** the

---

[4] In his Objection, Petitioner labels this as "Ground 1."  *See* Doc 17, PageID 1202.

trial record must be brought on direct appeal and claims based on evidence *outside* the trial record must be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (emphasis added). The Magistrate Judge found to the extent that Ground Two was based on evidence inside the trial record, it was procedurally defaulted; and to the extent that Ground Two was based on evidence outside the trial record, it lacked merit. Doc. 14, PageID 1181.

### A. Evidence Within the Trial Record

On direct appeal, Petitioner offered supporting facts for his ineffective assistance of counsel claim that differ from the supporting facts in his Petition for Habeas Relief.[5] Doc. 1, PageID 7. And because he did not "assert both the legal and factual basis" of Ground Two on direct appeal, Petitioner did not "fairly present [his] claim to a state court." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (emphasis omitted). Therefore, Petitioner failed to exhaust State remedies before petitioning for habeas relief in federal court as required by 28 U.S.C. § 2254(b)(1)(A).

Additionally, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Under Ohio law, *res judicata* bars petitioners from litigating claims that either could have been or were fully litigated at trial or on direct appeal. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St.2d (1967)).

The Magistrate Judge concluded that the portion of Ground Two supported by evidence in the record was procedurally defaulted because Ohio's *res judicata* doctrine is "an 'adequate

---

[5] On direct appeal, Petitioner's ineffectiveness claim was based on trial counsel's failure to 1) inquire about or present evidence at the suppression hearing that Petitioner was suffering from intoxication or drug use, 2) object to the admission of autopsy photos, and 3) file a motion in limine regarding prior bad acts testimony. Ex. 15, Doc. 10-1, PageID 168.

7

and independent' ground for justifying default." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006). Petitioner did not object to this portion of the Magistrate Judge's analysis. Accordingly, the Court accepts and adopts the Magistrate Judge's recommendation and finds that the portion of Ground Two supported by evidence in the record is procedurally defaulted.

### B. Evidence Outside the Trial Record

The State court evaluated the evidence offered by Petitioner outside the record under the two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984) and held that Petitioner's counsel was not ineffective. The Magistrate Judge found that the State court reasonably applied *Strickland* and recommended this Court deny Ground Two on its merits. Doc. 14, PageID 1191.

Petitioner argues that the *Strickland* standard was incorrectly applied. But as discussed below, Petitioner is mistaken and the Court accepts and adopts the Magistrate Judge's recommendation.

### i. The Strickland standard

Under the *Strickland* test for ineffective assistance of counsel, the petitioner must first demonstrate that counsel's performance was **deficient**; and second, that the deficient performance **prejudiced** the defense thereby rendering the trial unfair and the result unreliable. *Strickland*, 466 U.S. at 687 (emphasis added).

Counsel's performance is deficient if a petitioner shows that counsel's representation "fell below an objective standard of reasonableness." *Id*. at 688. The reviewing court's scrutiny of counsel's performance is "highly deferential" and "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689-90. Rather than inquiring whether

counsel's actions were reasonable, the question is "whether there is any reasonable argument that counsel satisfied the deferential *Strickland* standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. And "where the alleged error of counsel is a failure to advise a defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Under *Strickland* and § 2254(d), a federal habeas review of an ineffective assistance claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

  *ii.* *Trial counsel's performance was not deficient.*

The State court found that Petitioner's counsel was not deficient. The Magistrate Judge found the State court reasonably applied the *Strickland* standard. The Court agrees because based on the evidence, counsel exercised reasonable professional judgement in deciding to not pursue an NGRI defense.

In his Objection, Petitioner insists counsel's failure to investigate his mental health falls "outside the wide range of professionally competent assistance," amounting to deficiency. Doc. 17, PageID 1205. Petitioner cites two cases from the Ninth Circuit where the failure to investigate a defense based on mental impairment may have constituted deficient performance of counsel. *See U.S. v. Burrows*, 872 F.2d 915 (9th Cir. 1989); *Evans v. Lewis,* 855 F.2d 631 (9th Cir. 1988). Petitioner's reliance on these cases is misplaced.

9

In *Burrows,* a federal prisoner appealed the district court's denial of an evidentiary hearing under 28 U.S.C. § 2255, arguing ineffective assistance of counsel. The Ninth Circuit reversed the district court because "a mental state defense may have been a plausible defense for Burrows." *Burrows,* 872 F.2d at 918. The court cited evidence showing the defendant was a diagnosed "chronic paranoid schizophrenic," who "suffered a relapse" and "could not carry on a logical conversation." *Id.* at 916-18. It found nothing in the record explaining why counsel failed to investigate a possible mental state defense and therefore held that the district court should have held an evidentiary hearing to determine whether counsel was effective. *Id.*

In *Evans*, an Arizona state prisoner who was sentenced to death filed a habeas corpus petition alleging ineffective assistance when counsel failed to present defendant's impaired mental state as mitigating evidence at the sentencing hearing. Before the hearing, counsel had access to prior conviction records, which included a statement filed by a trial judge declaring that "defendant is in need of psychiatric treatment" and a pre-sentence report, which contained information about the prisoner's suicide attempt while incarcerated in a California mental facility. *Evans*, 855 F.2d at 636. Under Arizona law, an impaired mental state qualified as a mitigating factor at sentencing when the defendant was "significantly impaired, but not so impaired as to constitute a defense to prosecution." *Id.* The Ninth Circuit reversed the district court and held that counsel's failure to present any of the available evidence constituted deficient performance. *Id.* at 637.

*Burrows* and *Evans* are distinct from Petitioner's case for three reasons. First, Petitioner's ineffectiveness claim arises under 28 U.S.C. § 2254. As discussed above, this Court's review is "doubly deferential" to counsel's decision and to the State court's determination of counsel's decision. The State appellate court wrote, under Ohio law, "a trial

10

counsel's failure to seek a competency evaluation or to pursue an insanity defense is not, *per se*, ineffective assistance of counsel." *Miku III* at *5 (citing *State v. Decker*, 28 Ohio St.3d 137 (1986)). Thus, Petitioner cannot establish an ineffectiveness claim merely because counsel chose to not have Petitioner evaluated or pursue an insanity defense.

Second, the quality of the evidence Petitioner presented is less persuasive and the severity of Petitioner's mental illness is less significant than in *Burrows* and *Evans*. The *Burrows* defendant could not carry on a logical conversation. Petitioner spoke with a paramedic, a police officer and Detective Mongold; none of whom suggested that Petitioner had difficulty conversing. Petitioner offers a "list of mental problems[6] suffered by [Petitioner] at the time of the murder against his daughter" in the medical records from Phoenix Rising. But those records were dated months before the murder and do not carry the same weight as the statement from the trial judge and the pre-sentence report in *Evans*.

Third, Petitioner's trial counsel considered an insanity defense. This fact is supported by Petitioner's own self-serving affidavit. Ultimately, counsel told Petitioner an insanity defense would not work.[7]

The State appellate court reviewed Petitioner's evidence of his mental health and that he heard voices. But the appellate court ultimately found that the facts at trial showed that Petitioner tried to conceal his criminal conduct and that he knew what he did was wrong.

---

[6] Attention-deficient hyperactivity disorder, unspecified mood disorder, generalized anxiety disorder, and major depressive disorder. *See* Ex. 24, Doc. 10-1, PageID 321.

[7] There was a preliminary hearing on a motion to suppress where counsel reviewed the all the statements that Petitioner made in his interviews with Detective Mongold. Petitioner cites some of his statements from those interviews in his Objection. But counsel's decision to not proceed with an NGRI defense based on the interviews is not deficient simply because Petitioner draws a different conclusion from his statements. Also, this evidence would be within the record, subject to direct appeal and, for purposes of this Court's review, procedurally defaulted.

Therefore, the State court reasonably concluded that Petitioner failed to prove "that he suffered from a mental defect or disease that prevented him from understanding the wrongfulness of his criminal conduct" at the time of the offense. *Miku III* at *5. Petitioner would not have been able to establish a *prima facie* case of insanity under Ohio law. Hence, the State court reasonably applied *Strickland* in finding Petitioner's counsel did not perform deficiently by failing to present an NGRI defense that was not likely to succeed.

Petitioner presents no new, clear and convincing evidence to the contrary in his Objection. The Court adopts and accepts the Magistrate Judge's recommendation and agrees that Petitioner's trial counsel was not deficient.

  *iii. Petitioner was not prejudiced.*

The State court also found that counsel's decision to not present an NGRI defense did not prejudice Petitioner at trial. The Magistrate Judge found that the State court reasonably applied *Strickland* in reaching this conclusion. The Court agrees because Petitioner has not provided clear and convincing evidence to prove an NGRI defense would succeed under Ohio law.

Petitioner argues a "complete and accurate presentation of [Petitioner's] mental health condition could have resulted in a verdict of NGRI." Doc. 17, Page ID 1208. He claims that to prove prejudice under *Strickland,* he is "not required to show that he had a winning defense or that he was insane at the time of the crime" but instead "must show that he had a substantial defense," citing *Cipriano v. Birkett*, 42 Fed.Appx. 680 (6th Cir. 2002). *Id*. at PageID 1211.

Petitioner's argument directly contradicts Ohio law[8] and misapplies the *Cipriano* court's reasoning.

In *Cipriano*, the defendant claimed ineffective assistance when his counsel did not object to an erroneous jury instruction regarding the legal definition of sanity. The Sixth Circuit explained that even if the defendant met the deficiency prong of *Strickland*, he failed to prove prejudice. The court held that based on the "totality of the evidence before the judge or jury," there was no "reasonable probability" that the result of the proceeding would have been any different if counsel had objected to the jury instruction. *Cipriano*, 42 Fed.Appx. at 685.

Petitioner claims the evidence of his chronic and "severe mental illness" is "uncontested." Doc. 17, PageID 1211 (emphasis in original). The State court's findings of fact suggest otherwise. The trial court determined the evidence Petitioner offered outside the record failed to establish a *prima facie* case of insanity under Ohio law and therefore, an NGRI defense would likely not succeed at trial. Therefore, applying the *Cipriano* court's reasoning, even if Petitioner's counsel performed deficiently, he did not suffer prejudice because there was no reasonable probability that the result of his trial would have been any different if counsel had presented an NGRI defense.

In his Objection, Petitioner argues that if the evidence from his Petition for Post-Conviction Relief, which the State courts reviewed and found insufficient, were presented at trial, "there is an overwhelming probability that knowledge of [Petitioner's] history of severe mental illness would have shed a different light for the jury." *Id.* But Petitioner does not offer

---

[8] Ohio requires a person putting forth an NGRI defense to prove that "***at the time of the commission of the offense,*** the person did not know, as a result of a severe mental disease or defect, the wrongfulness of [their] acts." Ohio Rev. Code Ann. § 2901.01(A)(14) (Westlaw through File 100 of 134th Gen. Assemb.) (emphasis added).

any new, clear and convincing evidence to rebut the State court findings. Given the facts found at trial, the State courts did not misapply the *Strickland* standard in concluding there was no reasonable probability that Petitioner's trial was unreliable or fundamentally unfair.

Considering the totality of the evidence, and the deference given to the State court's findings in a federal habeas proceeding, the Court agrees with the Magistrate Judge that Petitioner was not prejudiced.

### C. Evidentiary Hearing

Petitioner argues the Court must hold an evidentiary hearing. But an evidentiary hearing is not warranted.

If a prisoner has "failed to develop the factual basis of a claim in State court proceedings," a federal habeas court may not grant an evidentiary hearing unless the claim relies on "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). If a federal habeas court holds an evidentiary hearing, "it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied." *Shinn v. Ramirez*, No. 20-1009, 2022 WL 1611786 at *12 (U.S. May 23, 2022). The facts underlying the claim need to establish "by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2254(e)(2)(B).

Here, Petitioner's ineffectiveness claim is partially procedurally defaulted and under *Shinn*, the Court may not consider additional evidence beyond the State court's record because Petitioner does not satisfy either exception to § 2254(e)(2). Petitioner's claim is not based on a new rule of law. The factual predicate of Petitioner's claim is the same that was reviewed by the

14

State appellate court and the Magistrate Judge; both found the evidence outside the record in support of the underlying facts of Petitioner's claim did not meet the clear and convincing standard.  The Court denies an evidentiary hearing.

## CONCLUSION

Petitioner failed to raise sufficient evidence or a sound argument as to why the Court should modify the Magistrate Judge's initial recommendation on Ground Two of his Petition for Habeas Relief.

Petitioner's Objection does not provide new, clear and convincing proof to overturn the State court's findings of fact or application of *Strickland*.  Petitioner has not proven he was insane as defined by Ohio law.  He has neither demonstrated that his counsel performed deficiently nor that he suffered prejudice due to counsel's alleged deficiency.  Thus, the Court accepts and adopts the Magistrate Judge's Report & Recommendation and denies the Objection.

The Court finds an appeal from this decision could not be taken in good faith.  28 U.S.C. § 1915(a)(3).  Because Petitioner has not made a substantial showing of a denial of a constitutional right directly related to his conviction or custody, the Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); Rule 11 of Rules Governing § 2254 Cases.

**IT IS SO ORDERED.**

    s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: June 7, 2022**